OPINION
PER CURIAM.
Jamal Barr, an inmate at the Pennsylvania State Correctional Institution (“SCI”) at Graterford, Pennsylvania, appeals the order of the District Court (1) denying his motion for a temporary restraining order and preliminary injunction and (2) granting Appellees’ motion for judgment on the pleadings. For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings.
I.
Because this appeal challenges the District Court’s grant of a motion for judgment on the pleadings, “we accept as true all of the allegations in the complaint and draw all reasonable inferences therefrom in favor of [the nonmovant].” Consol. Rail Corp. v. Portlight, Inc., 188 F.3d 93, 94 (3d Cir.1999).
In 2005, Barr and the Pennsylvania Department of Corrections (“DOC”) entered into a settlement agreement in an unrelated case in the Middle District of Pennsylvania. Pursuant to the agreement, which was to remain confidential, the DOC transferred Barr from SCI Greene to SCI Gra-terford and placed him in a private cell. The day after his arrival at Graterford, Lieutenant Oplaka, Unit Manager Baker, and Corrections Officer (“C.O.”) Wop threatened to place Barr in “the hole” if he did not accept a cellmate. Although Barr ultimately remained in a private cell, prison officials began searching his cell at least once a week “for no apparent reason.” After a few months of these searches, Barr informed Lieutenant Owens of the situation but the searches continued.
In December 2005, Barr witnessed two prison guards engaging in “inappropriate sexual misconduct.” One of the two guards questioned Barr about what he saw, to which Barr replied, “I’ll take that to the grave with me.” Three days later, Baker placed Barr in the Restricted Housing Unit (“RHU”) and Barr received a report stating that he was a threat to himself and others, and that he had a “fixation” for the above-noted guard. After about a week in the RHU, Barr returned to the general prison population and was placed in a private cell. The following day, Sergeant Isamoyer told Barr that he did not like stalkers and that he had the power to prevent Barr from ever obtaining parole. Isamoyer and Unit Manager Pasquale threatened to return Barr to the RHU if Barr did not accept a cellmate, and Barr was ultimately placed in a cell with a cellmate.
Barr contacted several prison officials in an attempt to return to a private cell. After these efforts failed, Barr’s family contacted Attorney McGovern and DOC Deputy Secretary Vaughn, both of whom had been involved with the settlement. McGovern and Vaughn contacted David DiGuglielmo, Graterford’s Superintendent, who then referred the matter to Lieutenant Owens. Owens instructed Pasquale to return Barr to a private cell. After a short delay, Barr was returned to a private cell.
At some point thereafter, McGovern forwarded a copy of the settlement agreement to Graterford for placement in Barr’s file. In light of this “disclosure” and the earlier incident with the guard, “many guards continued to spread the nature of [Barr’s] crime and falsified rumors throughout the institution.” C.O. Wise “began to verbally express her displeasure towards [Barr] during her nightly rounds.” *772 In October 2006, she issued Barr a “fabricated” misconduct citation. At the misconduct hearing later that day, Mary Canino, the hearing examiner, told Barr that if he did not waive his “24 hour hearing rights” she would give him 180 days in the RHU. In response to this threat, Barr waived his hearing rights and pled guilty to the misconduct charge. Canino ordered him to serve sixty days in the RHU, a sanction later reduced to forty-five days.
Before prison officials placed Barr in the RHU, he was strip-searched and his new sneakers were confiscated and never returned to him. Although Barr later grieved the matter and prison officials ultimately determined that he was to be reimbursed for the sneakers, he never received the reimbursement. After his release from the RHU in November 2006, Barr was placed in “the special needs unit” on Graterford’s “new side” because the “old side,” where he had resided previously, did not have any available private cells.
Barr contacted several prison officials in an attempt to be moved back to the old side. DiGuglielmo told him that once the old side’s “E-block” reopened, he would be moved back to the old side. When E-block reopened in January 2007, Barr contacted DiGuglielmo and requested to be moved. DiGuglielmo referred the issue to Major Feild, who refused to move Barr. Barr filed a grievance, which was assigned to and ultimately denied by Feild. Feild noted that, although Unit Manager Rodriquez could move Barr if she wanted to, he personally believed that Barr’s crime and recent misconduct justified keeping him on the new side. When Barr showed Feild’s decision to Rodriquez she told Barr to “leave her alone about being moved.”
Feild told Barr that the unit team would monitor Barr, and that Barr could renew his request to be moved once every thirty days. C.O. Young later informed Barr that Feild was “pissed-off’ about Barr’s grievance, and that Young had convinced Feild to move Barr to the old side in six months if Barr “promised not to file any more grievances or approach [Feild] in the hallway.” Barr sent letters to DiGugliel-mo and Deputy Lorenzo informing them of this “unwritten agreement” but the letters were ultimately referred back to Feild, who responded by stating that “ ‘staff has reason to believe that [Barr has] a history of behavioral issues.”
After receiving Barr’s letters, Feild instructed Rodriquez to place Barr in a tracking program, which is “designed to place scrutiny on an inmate in [the] general [prison] population.” Feild told Barr that if he did not agree to the program, Feild would place him in the RHU “for no reason.” After Barr entered the tracking program, Rodriquez instructed corrections officers to “write [Barr] up for anything.” Some of the officers “went out [of] there [sic] way to harass [Barr],” and “spread false rumors” about him. Barr filed two grievances in response to officers’ conduct but they were denied.
Prison officials also resumed searching Barr’s cell on a weekly basis. During one of these searches, they confiscated his “Jensen antennae,” which they never returned to him. He attempted to file a grievance but prison official Moyer refused to consider it.
Rodriquez then instructed the prison’s program managers to prohibit Barr from attending any religious, educational, or vocational activities. Barr filed a grievance, which was handled by Deputy Murray, who concluded that Barr could participate in the following activities on the old side: “chapel, Fieldhouse, [m]usic and [a]rt.” When Rodriquez learned of Murray’s decision, she stated that “she didn’t care what Deputy Murray said on paper.” To make sure Barr “wasn’t allowed on the old side for anything,” Rodriquez elevated his custody level. Barr grieved the matter but to *773 no avail. According to Barr, he is, to his knowledge, the “only inmate removed from all activities and school programs at S.C.I. Graterford while in [the] general [prison] population.”
In August 2007, Barr filed a complaint pursuant to 42 U.S.C. § 1983 in the Eastern District of Pennsylvania, setting forth the above allegations. He also moved for appointment of counsel. Barr’s complaint claimed that Appellees — forty-two current or former DOC administrators and officers — breached the terms of his settlement agreement and violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments. After answering Barr’s complaint, Appellees moved for judgment on the pleadings. While this motion was pending, Barr filed a motion for a temporary restraining order and preliminary injunction, requesting that the Court require Appellees to (1) forego transferring him to another prison and to continue to honor the settlement agreement; (2) reinstate him in Graterford’s program for sex offenders; and (3) allow him access to the law library located on Graterford’s old side.
In January 2008, the District Court denied Barr’s motion for appointment of counsel without prejudice. A few months later, the District Court granted Appellees’ motion for judgment on the pleadings and denied Barr’s motion for injunctive relief as moot. In granting Appellees’ motion, the Court concluded that it lacked jurisdiction to consider Barr’s claims relating to the settlement agreement, and that Barr’s constitutional claims lacked merit. Barr now appeals the District Court’s grant of judgment on the pleadings, as well as the Court’s denial of his motion for appointment of counsel and motion for a temporary restraining order and preliminary injunction.
II.
We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we may affirm on any basis supported by the record. Fairview Twp. v. EPA, 773 F.2d 517, 525 n. 15 (3d Cir.1985). We exercise plenary review over a district court’s order granting a motion for judgment on the pleadings, Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir.2005), and we will affirm such an order only if “the mov-ant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law.” Id. at 220. “We review the denial of a preliminary injunction for an abuse of discretion, an error of law, or a clear mistake in the consideration of proof.” Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir.2004) (internal quotations omitted). Finally, we review a district court’s decision declining to appoint counsel for abuse of discretion. Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir.2002).
A. Breach of Settlement Claim
Barr alleges that Appellees violated the confidentiality provision of the settlement agreement from his earlier lawsuit by “inserting that agreement in all his files.”[1] *774 The District Court declined to exercise supplemental jurisdiction over this state law claim. We review that decision for abuse of discretion. Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 175 (3d Cir.1999).
“[A] district court may exercise supplemental jurisdiction where state-law claims share a ‘common nucleus of operative fact’ with the claims that supported the district court’s original jurisdiction.” De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir.2003) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); see 28 U.S.C. § 1367(a). A “mere tangential overlap of facts,” however, is insufficient to confer supplemental jurisdiction. Nanavati v. Burdette Tomlin Mem’l Hosp., 857 F.2d 96, 105 (3d Cir.1988). The District Court concluded that Barr’s claim relating to the settlement agreement was only tangentially related to his constitutional claims. Indeed, the fact underlying Barr’s breach of settlement claim — the placement of the confidential settlement agreement in his prison files— does not undergird any of his other claims. Accordingly, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over his breach of settlement claim.
B. Retaliation Claim
Barr next claims that Appellees violated his First Amendment right to freedom of speech.[2] The District Court construed this claim as a retaliation claim, and we agree with that treatment. A prisoner asserting a retaliation claim must show that (1) “the conduct which led to the alleged retaliation [is] constitutionally protected”; (2) “he suffered some adverse action at the hands of the prison officials ... sufficient to deter a person of ordinary firmness from exercising his constitutional rights”; and (3) there is a “causal link between the exercise of his constitutional rights and the adverse action taken against him.” Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001) (internal quotations and citation omitted). Even if the prisoner makes this showing, “prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.” Id. at 334.
The District Court construed Barr’s complaint as alleging that Appellees retaliated against him for, inter alia, filing grievances,[3] which it correctly deemed constitutionally protected conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). Yet the Court ultimately rejected Barr’s retaliation claim, concluding that Appellees’ retaliatory conduct was not “sufficient to deter a person of ordinary firmness from exercising his constitutional rights.” We disagree with this conclusion. After Barr filed a grievance against Major Feild and reported Feild’s proposed “unwritten agreement” to Superintendent DiGuglielmo and Deputy Lorenzo, Barr was placed in a tracking program, where he was prohibited from participating in any prison activities (including religious activities, a point the District Court did not mention), subjected to weekly cell searches, and otherwise targeted by corrections officers. We believe such treatment may be sufficient to deter an individ *775 ual of ordinary firmness from exercising his constitutional rights. See Bell v. Johnson, 308 F.3d 594, 603 (6th Cir.2002) (stating that “unless the claimed retaliatory action is truly inconsequential, the plaintiffs claim should go to the jury” (internal quotations omitted)).
We also find that Barr sufficiently pleaded the third prong of the retaliation test, as his allegations suggest a causal link between his use of the grievance process and the adverse action taken against him. The complaint alleged that Major Feild stated that he was “pissed-off’ that Barr filed a grievance against him, and was willing to move Barr to Graterford’s old side if Barr stopped filing grievances. Although the complaint does not provide precise dates, it suggests that Feild placed Barr in the tracking program shortly after Barr filed the grievance against Feild and informed DiGuglielmo and Lorenzo of Feild’s proposed “unwritten agreement.”
In light of the above, we conclude that Barr sufficiently pleaded his retaliation claim. Although Appellees might ultimately show that they would have taken the same actions against Barr absent his use of the grievance process, those facts are not part of the record at this stage. Accordingly, the District Court erred in granting judgment on the pleadings as to Barr’s retaliation claim.
C. Equal Protection Claim
Barr also alleges that Appellees violated the Equal Protection Clause. In rejecting this claim, the District Court concluded that Barr “has not even alleged in his complaint that he has been treated differently from other, similarly situated, persons.” Yet Barr’s complaint indeed alleges that, to his knowledge, he is “the only inmate removed from all activities and school programs at S.C.I. Graterford while in [the] general [prison] population.” This allegation seemingly attempts to raise a “class of one” equal protection claim. To state a claim under this theory, “a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment.” Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir.2008). Although Barr alleged that Appellees treated him differently from other inmates in the general prison population, he did not allege that Appellees intended to treat him differently from these other inmates or that Appellees lacked a rational basis for doing so. Accordingly, the District Court did not err in denying this claim.[4]
D. Barr’s Remaining Claims and Motions
Barr’s complaint also raises claims under the Fourth Amendment, Eighth Amendment, and the Due Process Clause of the Fourteenth Amendment. For the reasons given by the District Court, we will affirm the Court’s denial of these claims.
Barr also challenges the District Court’s denial of his motion for a temporary restraining order and a preliminary injunction. In light of this case’s remand to the District Court, this motion may no longer be moot. Because the District Court did not reach the motion’s merits, we decline to do so in the first instance. On remand, the District Court should consider whether this motion warrants relief.
Finally, Barr challenges the District Court’s denial of his motion seeking appointment of counsel and requests that we appoint him counsel on appeal. Because a *776 district court has broad discretion in determining whether to appoint counsel, we “should reverse that exercise of discretion only where the party seeking appointment has shown that the district court’s decision not to appoint counsel was clearly an abuse of discretion.” Tabron v. Grace, 6 F.3d 147, 155 n. 4 (3d Cir.1993). Barr has failed to make this showing, and we deny his request for appointment of counsel here. On remand, however, the District Court may wish to consider whether it should appoint counsel going forward, as it seems that Barr’s retaliation claim might require considerable discovery and might turn on credibility determinations. See id. at 156 (noting that these are factors that may warrant appointment of counsel).
III.
In light of the above, we will vacate the District Court’s order granting Appellees’ motion for judgment on the pleadings to the extent the order dismisses Barr’s retaliation claim, and we will remand that claim for further proceedings. On remand, the District Court should consider the merits of Barr’s motion for a preliminary injunction and may wish to appoint Barr counsel going forward. We will affirm the District Court’s order granting judgment on the pleadings as to Barr’s remaining claims.

. The order of dismissal in that earlier case did not include the terms of the settlement or state that the District Court intended to retain jurisdiction over the settlement after the case's dismissal. As such, to the extent Barr seeks the District Court here to enforce the settlement agreement, the Court lacks jurisdiction to do so. See Sawka v. Healtheast, Inc., 989 F.2d 138, 141 (3d Cir.1993) (holding that a district court does not have the authority to enforce a settlement agreement that “is the basis of, but not incorporated into, an order or judgment of the court''); see also In re Phar-Mor, Inc. Sec. Litig., 172 F.3d 270, 274 (3d Cir.1999) (stating that a " 'dismissal order’s mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order' ” (quoting Miener v. Mo. Dep't of Mental Health, 62 F.3d 1126, 1128 (8th Cir.1995))).

. Although Barr’s appellate brief also alleges that Appellees infringed upon his free exercise of religion, he has waived this claim because he raises it for the first time on appeal. See Gass v. V.I. Tel. Corp., 311 F.3d 237, 246 (3d Cir.2002).

. The District Court also considered whether Barr's witnessing of the two guards' "inappropriate sexual misconduct” could serve as the basis for a retaliation claim. We agree with the Court’s reasons for ultimately rejecting this claim.

. Because these deficiencies could be cured by amendment, Judge Ambro would vacate the portion of the District Court's order dismissing Barr’s equal protection claim and direct the District Court on remand to grant Barr leave to amend his complaint.