RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JAMES MABEN,

*Plaintiff-Appellant,*

No. 17-1289

*v.*

TROY THELEN,

*Defendant-Appellee.*

─────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-10602—Stephen J. Murphy, III, District Judge.

Argued: March 13, 2018

Decided and Filed: April 3, 2018

Before: MERRITT, CLAY, and SUTTON, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:** William C. Marra, COOPER & KIRK, PLLC, Washington, D.C., for Appellant.
Joseph Y. Ho, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for
Appellee. **ON BRIEF:** William C. Marra, COOPER & KIRK, PLLC, Washington, D.C., for
Appellant. Joseph Y. Ho, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing,
Michigan, for Appellee.

─────────────

**OPINION**

─────────────

    CLAY, Circuit Judge.  Plaintiff James Maben ("Maben") appeals from the judgment
entered by the district court granting Defendant Troy Thelen's ("Thelen") motion for summary
judgment and dismissing the case.  For the reasons set forth below, we **AFFIRM in part** and

**REVERSE in part** the judgment of the district court and **REMAND** the case to the district court for proceedings consistent with this opinion.

## BACKGROUND

### I.       Factual History

Maben is an incarcerated prisoner in Michigan.  On October 19, 2015, Maben was in the prison's food service line for lunch.  The cafeteria server provided Maben with half a serving of food, dumping out the other half.  Maben "politely ask[ed]" the cafeteria server why he did not receive a full serving.  (R. 14, Maben Affidavit, PageID # 79.)  The server responded that he "was doing as told" and directed Maben to speak to a designated cafeteria employee.  (*Id.*)  Maben raised the issue with that employee, who instructed Maben to speak with his supervisor at the end of the line.  Before Maben could speak to the supervisor, Thelen, a prison guard, "began yelling" and said "shut the fuck up if you wanna eat, your [sic] not gonna change anything Bitch."  (*Id.*)  The supervisor "acknowledged the severely inadequate portion," took Maben's tray, and gave him the full portion of food.  (*Id.*)

Thelen then came over to Maben and demanded his identification number.  Thelen said "if you're going to complain then you're going to get a misconduct for it."  (R. 1, Complaint, PageID # 5.)  Thelen then issued Maben a misconduct ticket for creating a disturbance.  The cafeteria "was dead silent in amazement with defendant Thelen's behavior."  (R. 14, Maben Affidavit, PageID # 79.)  Maben claimed that he "[n]ever" became disruptive, but that Thelen "became bel[l]iger[e]nt[,] swearing and yelling, which did [frighten him], [and] humiliate [him] in front of 100 plus other prisoners."  (*Id.*)  Maben was "embarrassed, demeaned, and humiliated by Defendant Thel[e]n's statements, and felt that he could no longer comply with the grievance procedure if he was going to be treated in this manner."  (R. 1, Complaint, PageID # 5.)  He has "been forced to endure shortened portions ever since, as a result of Thelen[']s retaliation [and] out of fear of future retaliation."  (R. 14, Maben Affidavit, PageID # 80.)

On October 22, 2015, a misconduct hearing was held.  The hearing officer found Thelen's statement "more credible" because his report was "clear, detailed, and unequivocal." (R. 13-2, Misconduct Report, PageID # 67.)  The hearing officer chose not to view video footage

of the incident, concluding that it would be irrelevant because there was no sound.  Maben was found guilty of "Class II misconduct" for "creating a disturbance" and lost privileges for seven days as punishment.  (*Id.*)

## II.     Procedural History

On February 16, 2016, Maben brought a *pro se* action under 42 U.S.C. § 1983 against Thelen in his official and individual capacities.  He alleged that Thelen unconstitutionally retaliated against him "for participating in the protected activity of attempting to comply with the Michigan Department of Corrections[1] Grievance Policy."  (R. 1, Complaint, PageID # 3.)

On April 25, 2016, Thelen filed a motion for summary judgment.  Thelen argued that the court should dismiss the official capacity claim because of the Eleventh Amendment.  He also argued that Maben's First Amendment retaliation claim failed because he "did not engage in any protected activity and whatever treatment he received was not attributable to any protected activity."  (R. 13, Thelen MSJ, PageID # 47.)  Finally, Thelen argued that he was protected by qualified immunity because Maben had not demonstrated that Thelen violated clearly established statutory or constitutional rights.  Maben filed a *pro se* response to Thelen's motion.

On March 1, 2017, the district court granted Thelen's motion for summary judgment, and dismissed the case.  The district court concluded that Maben's retaliation claim was barred based on two grounds.  First, the court concluded that "the dispute as to what really occurred was already adjudicated by the MDOC in the course of its grievance process" and that those factual findings were entitled to preclusive effect in federal court.  (R. 20, Opinion, PageID # 120.)  Second, the court concluded that the finding of guilt at Maben's misconduct hearing "checkmates" his retaliation claim, citing to the Eighth Circuit's "checkmate doctrine."  (*Id.*)  *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994).

On March 17, 2017, Maben timely filed his notice of appeal.  On appeal, Maben argues that the district court incorrectly gave preclusive effect to the factual findings at Maben's misconduct hearing and incorrectly applied the "checkmate doctrine."  Thelen argues that this

---

[1]Hereinafter referred to as "MDOC."

panel should affirm the judgment of the district court on the alternative grounds that Maben has failed to establish a First Amendment retaliation claim, that Thelen is entitled to qualified immunity, and that the Eleventh Amendment bars Maben's suit for damages against Thelen in his official capacity.

## DISCUSSION

### I.      Preclusive Effect of Factual Findings Made at the Misconduct Hearing

#### Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

#### Analysis

The district court incorrectly found that Maben "failed to establish a First Amendment retaliation claim" because "the dispute as to what really occurred was already adjudicated by the MDOC in the course of its grievance process," and "federal courts give preclusive effect to the factual findings at misconduct hearings like Maben's." (R. 20, Opinion, PageID # 119–20.) The factual findings made at Maben's minor misconduct hearing do not have preclusive effect in federal court and do not bar Maben's claim.

To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in

litigation brought by a prisoner under § 1983. *Id.* at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand precludes a contrary finding in federal court." *Id.* at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403–04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id.* at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id.*

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id.* at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id.* The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id.* at 405.

This Court has not considered whether a hearing officer's factual determinations at a minor misconduct hearing have preclusive effect in subsequent § 1983 litigation. However, in this case, we conclude that they do not because neither the first nor third requirements of the *Peterson* test have been met.

Under the first requirement, the state agency must have been acting in a "judicial capacity." An administrative agency "acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and gives the parties an

opportunity to seek court review of any adverse findings." *Peterson*, 714 F.3d at 912 (alteration omitted) (quoting *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 547 (6th Cir. 2012)).

In *Peterson*, the Court found that the "hearing officer considered evidence that was put into the record by [the prisoner] and [the officer], allowed the parties to argue their version of the facts at a formal hearing, and issued a written final decision that, had [the prisoner] chosen to appeal, could have been subject to direct review in state court." *Id*. The Court noted the "whole raft of judicial-type protections available to Michigan prisoners in major misconduct hearings." *Id*. This included that "the accused prisoner must receive an 'evidentiary hearing without undue delay,' be given 'reasonable notice' of the hearing, receive 'an opportunity to present evidence' and to present 'oral and written arguments on issues of fact,' and be allowed to submit 'rebuttal evidence' to the evidence against him." *Id*. at 912 (citing MICH. COMP. LAWS § 791.252(a), (b), (d), (e)). With regard to evidence, "any objections to the evidence's admissibility must be resolved and explained on the record," *id.* (citing § 791.252(g)), and "all admitted evidence must be made part of the record," *id.* (citing § 791.252(h)). "[T]he presiding hearing officer must be an attorney, [who] can 'administer an oath or affirmation to a witness' and 'take depositions' as a part of his fact-finding role, must be impartial and must recuse if the accused files a motion successfully showing bias, must abstain from ex parte communications with the accused prisoner and the accusing Department of Corrections staff, and must make an official record of the hearing at which he presides." *Id*. at 912–13 (citing MICH. COMP. LAWS §§ 791.251(6); 791.252(f), (i), (j); 791.253). Finally, the "hearing officer must conclude the process by issuing a written final decision that is based solely on the preponderance of the evidence in the record, and that decision must be immediately mailed to the accused prisoner," who "has a right to appeal it within the agency and then . . . to state court." *Id*. at 913 (citing MICH. COMP. LAWS §§ 791.252(k), 791.254, 791.255).

We can easily distinguish the protections provided in a major misconduct hearing from the barebones protections to which Maben was entitled at his minor misconduct hearing. "A prisoner charged with minor misconduct shall be provided a fact-finding hearing conducted in accordance with R 791.3310." MICH. ADMIN. CODE R. 791.5501. "A prisoner shall receive sufficient written notice of the purpose of a fact-finding hearing sufficiently prior to the hearing

to allow preparation of a response." MICH. ADMIN. CODE R. 791.3310. The notice includes "[a] copy of any disciplinary report or other information regarding circumstances giving rise to the hearing." *Id*. During the fact-finding hearing, a prisoner is entitled to "be present and speak on his or her own behalf" and to "receive a copy of any department document specifically relevant to the issue before the hearing officer, unless disclosure of the document would be a threat to the order and security of the facility or the safety of an individual." *Id*. The prisoner may waive the fact-finding hearing. *Id*. "Unless the prisoner waives the Class II hearing and pleads guilty, an informal hearing shall be conducted in accordance with Administrative Rule 791.3310." (Maben Br. at SA7.) "Only Resident Unit Managers, Captains, and/or Lieutenants designated by the Warden shall conduct the hearing. The staff person conducting the hearing shall have had no prior direct involvement in the matter at issue." (*Id*.) The prisoner is not entitled to an investigation by the hearing investigator. "The hearing officer shall make a summary report of the hearing and decision or recommendation." MICH. ADMIN. CODE R. 791.3310. There is no judicial review in state court of a minor misconduct report. *Martin v. Stine*, 542 N.W.2d 884, 886 (Mich. Ct. App. 1995).

Clearly, the procedural protections that are available for major misconducts are not the same as those available for minor misconducts. And a number of the protections the *Peterson* Court found significant are absent here, like that there be a formal hearing, that there be a written final decision that is subject to direct appeal in state court, or that the prisoner be able to present written arguments or submit rebuttal evidence. 714 F.3d at 912. Because there were insufficient judicial-type protections available to Maben in his minor misconduct hearing, MDOC was not acting in a "judicial capacity" during Maben's minor misconduct hearing.

Under the third requirement, the prisoner must have had an adequate opportunity to litigate the factual dispute. In *Peterson*, the Court's analysis under this requirement mirrored its analysis under the first. The Court found the prisoner had an adequate opportunity to litigate for the reasons discussed under the first factor based on "a plethora of statutory protections" available to prisoners. 714 F.3d at 913. For the same reasons noted above, Maben did not have an adequate opportunity to litigate his case. Furthermore, just like the Court in *Roberson*, we find it relevant that the hearing officer refused to view the video of the incident, despite Maben's

request that the officer watch it.  Even though the video contained no audio, it would have helped the hearing officer decide whether Maben was calm (as Maben claims) or whether he created a disturbance (as Thelen claims).

Consequently, because the four-factor test as set out in *Peterson* and *Roberson* is not met in this case, the factual findings made in Maben's minor misconduct hearing do not have preclusive effect.  Maben can dispute the factual findings of the minor misconduct hearing and can seek a contrary finding in federal court.  The district court erred by concluding otherwise. Accordingly, we reverse this ruling of the district court.

## II.    "Checkmate Doctrine"

### Standard of Review

This Court reviews a district court's grant of summary judgment de novo.  *Gillis*, 845 F.3d at 683.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### Analysis

The district court concluded that the finding of guilt at Maben's misconduct hearing barred Maben's claim, citing to the Eighth Circuit's "checkmate doctrine."  (R. 20, Opinion, PageID # 120.)  The "checkmate doctrine" provides that when a prison body finds that a prisoner has committed "an actual violation of prison rules" and the "finding [is] based on some evidence of the violation, the finding essentially checkmates [the] retaliation claim."  *Henderson*, 29 F.3d at 469; *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (restating the *Henderson* test without using "essentially" as a qualifier); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1215 (11th Cir. 2011).

Other circuits have rejected this categorical bar on a retaliation claim.  *Watson v. Rozum*, 834 F.3d 417, 426 (3d Cir. 2016) ("[A] plaintiff can make out a retaliation claim even though the charge against him may have been factually supported."); *Bruce v. Ylst*, 351 F.3d 1283, 1289–90 (9th Cir. 2003); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) ("Although we decline to

hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence . . . ."); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

This Court has never adopted the "checkmate doctrine" in a published opinion.**2** We now reject that doctrine. A finding of guilt at a prison misconduct hearing does not act as an absolute bar to a prisoner's First Amendment retaliation claim.

The "checkmate doctrine" is contrary to and irreconcilable with the burden-shifting framework that this Court has adopted when analyzing a prisoner's retaliation claim. This Court has repeatedly held that to succeed on a First Amendment retaliation claim, a plaintiff must show that:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Under the third element, "the subjective motivation of the defendants is at issue." *Id*. at 399. "The analysis of motive in retaliation claims is well-developed"—"[o]nce the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Id*. (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*. A defendant must make this showing by a preponderance of the evidence. *King v. Zamiara*, 680 F.3d 686, 709 (6th Cir. 2012). And officers can point to "disruptive" behavior as a reason for taking action. *Id*.

Adopting the "checkmate doctrine" as articulated by the Eighth Circuit would render our Circuit's *Mount Healthy* burden-shifting framework superfluous. Guilt of misconduct may be

---

**2**This Court has applied the "checkmate doctrine" in various unpublished opinions. *See, e.g.*, *Patterson v. Godward*, 505 F. App'x 424, 425 (6th Cir. 2012); *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005).

relevant summary judgment evidence within that framework, but it does not automatically bar a plaintiff's claim. Adopting the "checkmate doctrine" would also improperly lower a defendant's evidentiary burden. Under the *Mount Healthy* and *Thaddeus-X* analysis, a defendant must show by a preponderance of the evidence "that he would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399; *King*, 680 F.3d at 694. This is a greater burden than the "checkmate doctrine's" "some evidence" standard. *Henderson*, 29 F.3d at 469.

Furthermore, in the motion to dismiss context, we have explicitly rejected the argument that an "administrative determination that [the prisoner] actually committed the . . . misconduct precludes him from being able to establish retaliation." *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). The Court found in *Thomas* that "guilt of misconduct" did not negate an allegation of protected conduct and rejected MDOC's argument that the prisoner could not "show causation without first demonstrating that the misconduct charge was ultimately resolved in his favor." *Id*. at 440–42. We see no reason why we would apply a different rule depending on whether a case is at the motion to dismiss stage, or at the summary judgment stage.

In all, we cannot reconcile the "checkmate doctrine" with this Court's First Amendment retaliation case law and we will not adopt a doctrine that would flout this Court's precedent. Holding otherwise would also "unfairly tempt corrections officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims." *Woods*, 60 F.3d at 1165. A prisoner "deserves the opportunity to try to show that the reasons given for disciplining him were a pretext for the prison officials' retaliatory animus." *Orebaugh v. Caspari*, 910 F.2d 526, 529–30 (8th Cir. 1990) (Heaney, J., concurring in part and dissenting in part). On summary judgment, the traditional burden-shifting framework announced in *Mount Healthy* and *Thaddeus-X* applies.

Consequently, the district court erred when it concluded that MDOC's finding of misconduct "checkmates" Maben's retaliation claim. Maben's claim is not barred based merely on the fact he was found guilty of creating a disturbance at a misconduct hearing. Accordingly, we reverse this ruling of the district court.

## III.      First Amendment Retaliation

### Standard of Review

This Court reviews a district court's grant of summary judgment de novo.  *Gillis*, 845 F.3d at 683.  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party must demonstrate the "basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Id*. at 323 (internal citations and quotation marks omitted).  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal citations and quotation marks omitted).  The reviewing court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251–52. A court should view the facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### Analysis

Thelen argues that this Court should affirm the grant of summary judgment in his favor because "Maben failed to establish the elements of a retaliation claim."  (Thelen Br. at 7.)  He argues that Maben was not engaged in constitutionally protected activity, and that even if he were, that he violated a legitimate prison regulation and was no longer engaged in protected activity once he became disruptive.  Thelen also argues that issuing a minor misconduct ticket does not rise to the level of "adverse action."  Finally, he argues that Maben has failed to show that the misconduct was motivated by Maben's protected activity.

A First Amendment retaliation claim has three elements:

(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X*, 175 F.3d at 394.

### A.      Protected Conduct

As to the first element, "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("Filing grievances through the inmate grievance mechanism is protected conduct."). However, the right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King*, 680 F.3d at 699, and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

Viewing the facts and drawing all inferences in Maben's favor, Maben has presented sufficient evidence that he was engaged in protected conduct. According to Maben's account, he received half the serving of food that he was entitled to receive. He then "politely" and "quietly" raised the inadequacy of his food portion to a line worker, a cafeteria worker, and a supervisor. (R. 14, Maben Affidavit, PageID # 79–80.) It was Thelen who interrupted that process by yelling at Maben, "charg[ing]" over to Maben to demand his identification, and issuing him a misconduct ticket. (*Id*. at # 79.) Despite Thelen's actions, the cafeteria supervisor "acknowledged the severely inadequate portion," took Maben's tray, and gave him the correct serving. (*Id*.) By complaining about the insufficient quantity of food he had received, Maben was pursuing a grievance about prison conditions and seeking redress of that grievance. Accordingly, Maben was engaged in protected conduct.

Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison

officer should "not be able to conduct a non-invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1–2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus-X v. Love*, 215 F.3d 1327, at *2–3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]"). We have also described a non-frivolous grievance as a "legitimate" grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009). Whether there is in fact a *de minimis* exception to prisoner grievances is irrelevant to the disposition of this case. Maben was complaining about the adequacy of his food, and we refuse to say that a complaint about one of the major requirements of life is a frivolous or *de minimis* grievance. This is especially true where Maben appears to have been correct: the cafeteria worker "acknowledged the severely inadequate portion" and corrected the error. (R. 14, Maben Affidavit, PageID # 79.)

Further, this is true even though Maben pursued his grievance orally, rather than in writing. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley*, 345 F. App'x at 985 (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).

"Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). While we recognize concerns about

opening the floodgates to frivolous prisoner lawsuits, "we are not persuaded that an oral grievance should not receive constitutional protection solely because it is lodged by a prisoner as opposed to a civilian." *Mack*, 839 F.3d at 298. A "prisoner[] retain[s] the constitutional right to petition the government for the redress of grievances." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Johnson v. Avery*, 393 U.S. 483 (1969)). But this right is limited insofar as the petitioning activity is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[A]lthough certain types of 'petitioning' would be obviously inconsistent with imprisonment (marches or group protests, for example)," we do not think that Maben's oral complaint about prison conditions "fall[s] into that category." *Pearson*, 471 F.3d at 741.

Moreover, MDOC's own grievance policy required that prisoners raise their grievances orally with staff before they file a formal written grievance, and a grievance may even be dismissed if "[t]he grievant did not attempt to resolve the issue with the staff member involved prior to filing the grievance." (R. 14, Grievance Policy, PageID # 85). Maben has maintained that he was "attempting to resolve [his] issue with the staff involved prior to writing a grievance" and "engaged in the grievance process according to [MDOC] policy."**3** (R. 14, Maben Affidavit, PageID # 79–80.) It would be an unfair and illogical result for prisons to require initial oral complaints, but then be able to argue that a retaliation claim fails because the prisoner filed an oral, rather than written, complaint. Maben should not be punished for complying with prison policy, nor should prison officials be allowed to retaliate against Maben for making an oral grievance.

Finally, Thelen argues that if Maben was initially engaged in protected activity, "once Maben became disruptive, he violated a legitimate prison regulation and was no longer engaged in protected conduct." (Thelen Br. at 10.) We have previously said that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. But at this stage of the litigation, we must "consider the evidence in the light most favorable to the non-moving party and draw all

---

**3**Even at his misconduct hearing, Maben maintained that he was "trying to resolve the issue, before filing a grievance like Policy told [him]." (R. 13-2, Misconduct Report, PageID # 67.)

reasonable inferences in that party's favor," *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016), and Maben swore in his affidavit that "[n]ever did [he] become disruptive." (R. 14, Maben Affidavit, PageID # 79.) Thelen appears to argue only that his version of events is true, and Maben's is false, which he cannot do at this stage.

## B. Adverse Action

As to the second element, "[a]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. "Whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). However, some adverse actions are so *de minimis* that they do not rise to the level of a constitutionally cognizable injury. *Thaddeus-X*, 175 F.3d at 396 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]his threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id*. at 398. Indeed, "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603. (citing *Thaddeus-X*, 175 F.3d at 398); *Kennedy v. Bonevelle*, 413 F. App'x 836, 840 (6th Cir. 2011) ("[O]nly *de minimis* violations should be dismissed as a matter of law; in general, the adverseness question should survive the pleading stage.").

When deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment Maben could have faced and the punishment he ultimately did face. *See Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (looking to what the prisoner "could have been sentenced to . . . if he had been found guilty"). The sanctions that Maben faced for a Class II misconduct included: "[t]oplock (confinement to quarters), not to exceed five days . . . ."; loss of privileges for up to 30 days; assignment of extra duty; and, restitution and/or disgorgement. (Maben Br., Disciplinary Sanctions, SA21; R. 13-2, Misconduct Hearing, PageID # 67.) The actual punishment resulting from Maben's misconduct hearing was loss of privileges for seven days. These privileges included the rights to access exercise facilities, to attend group

meetings (including Bible class), to use the telephone, to have visitors, to access the general library, and to access the activity room.

In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse." 630 F.3d 468, 474 (6th Cir. 2010). In *Noble v. Schmitt*, this Court denied qualified immunity where the conduct at issue was that "Defendants restricted his privileges after he filed a considerable number of grievances against them." 87 F.3d 157, 162 (6th Cir. 1996). In *Harbin-Bey v. Rutter*, when concluding that the prisoner suffered no adverse action, the Court noted that the prisoner "did not lose any privileges as a result of the [Notice of Intent to Conduct an Administrative Hearing]." 420 F.3d 571, 579 (6th Cir. 2005).

In other cases, we have found sufficiently adverse punishments that were "at least as severe as" the one imposed here, including confiscating legal papers and other property, *Bell*, 308 F.3d at 604, subjecting the prisoner to retaliatory cell searches, *id.*, and damaging a prisoner's typewriter, *LaFountain v. Harry*, 716 F.3d 944, 948–49 (6th Cir. 2013); *see also Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) ("[E]ven though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a *de minimis* consequence for someone confined in a prison cell."); *Barr v. Diguglielmo*, 348 F. App'x 769, 774 (3d Cir. 2009) (finding an adverse action where a prisoner "was prohibited from participating in *any* prison activities (including religious activities . . .)"); *Reynolds v. Green*, 25 F. App'x 256, 261 (6th Cir. 2001) (finding an adverse action where a prisoner was transferred from a facility where he could "come and go with permission," to a facility where he could not); *Hall v. Sutton*, 755 F.2d 786, 787–88 (11th Cir. 1985) (holding that an inmate stated a First Amendment retaliation claim based upon the confiscation of his tennis shoes). *But see Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (finding that a loss of fourteen days of privileges did not constitute adverse action).

In all, the deprivation of privileges is hardly "inconsequential"—indeed, they are all that prisoners really have. Furthermore, the issuance of the minor misconduct ticket subjected Maben to the risk of even more significant sanctions, including confinement to his cell, which is

certainly not "inconsequential." *See Hill*, 630 F.3d at 474. Because this case did not involve *de minimis* retaliatory action, this question cannot be resolved as a matter of law. It is for the factfinder to decide whether the deprivation of those privileges "poses a sufficient deterrent threat to be actionable." *Bell*, 308 F.3d at 603.

### C.      Causation

Under the third element, "[u]sually, the question of causation is a factual issue to be resolved by a jury, and may be satisfied by circumstantial evidence." *Harris v. Bornhorst*, 513 F.3d 503, 519–20 (6th Cir. 2008) (citing *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996)). "Nonetheless, a court may grant summary judgment even in a causation inquiry, where it is warranted." *Hartsel*, 87 F.3d at 803 (citing *Langford v. Lane*, 921 F.2d 677, 683–84 (6th Cir. 1991)). "Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Thaddeus-X*, 175 F.3d at 399 (citing *Mount Healthy*, 429 U.S. 274). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Id*.

Maben has presented evidence that, after receiving less than a standard serving of food, he "politely" and "quietly" complained about the quantity of food. (R. 14, Maben Affidavit, PageID # 79–80.) Maben said that he "[n]ever" became disruptive, but that it was Thelen who began yelling at Maben, who "became bel[l]iger[e]nt," and who issued Maben a misconduct ticket. (*Id*. at # 79)

Three separate witnesses corroborate Maben's account of the events.[4] For example, Russell Govett stated that Thelen "continued yelling abuses [at Maben] and said something about

---

[4]These statements were included in Maben's *pro se* response to Thelen's motion for summary judgment. Thelen suggests that the "unsworn statements vary in their compliance with 28 U.S.C. § 1746." (Thelen Br. at 10 n.1.) Section 1746 provides that an unsworn declaration may be used as a sworn statement if it is "subscribed" by a person "as true under penalty of perjury, and dated." 28 U.S.C. § 1746. Luke Carlson's statement is signed and dated "under the penalty of perjury" and attested "to the best of my knowledge." (R. 14, Statements, PageID # 87.) Russell Govett's statement is signed and dated "under penalty of perjury, that the afore mentioned [sic] is both true and correct." (*Id*. at # 88.) Anthony Post's statement is sworn "under penalty of perjury, that the foregoing is both true and correct," it is signed, but it is not dated. (*Id*. at # 89.) Under § 1746, then, it seems the only problematic statement is Post's because it does not contain a date.

him being a bitch and he would not change anything anyway." (R. 14, Govett Statement, PageID # 88.) Govett also stated that Thelen "asked Mr. Maben for his ID and wrote him a ticket for complaining." (*Id.*) He said that "[a]t no time during the incident did Mr. Maben get loud or speak in more than a conversational tone." (*Id.*)

Additionally, there is a suspicious temporal proximity between Maben's grievance and the alleged retaliatory action. This Court has "previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive." *King*, 680 F.3d at 695–96 (citations omitted); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) ("[T]emporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." (citation and internal quotation marks omitted)). Indeed, Thelen issued the misconduct ticket *immediately* after Maben raised the issue of inadequate food portions and as Maben was trying to remedy the situation with the food supervisor.[5]

Based upon this evidence, we conclude that Maben has introduced sufficient evidence for a reasonable jury to find that Thelen's "adverse action was motivated at least in part by [Maben's] protected conduct." *Brown*, 312 F.3d at 790. Consequently, the burden shifts to Thelen. *Id.*

Thelen's only response is that the issuance of a misconduct ticket was not causally connected to any constitutionally protected activity. Instead, he argues that he intervened not because Maben was engaged in protected activity, but because Maben was causing a disturbance. In his affidavit, Thelen denied retaliating against Maben. Again, however, Maben "hotly disputes" that "Maben was causing a disturbance." (Maben Rep. Br. at 23.) Thelen has "done little more than deny the allegations put forth by" Maben, which is insufficient to meet his burden. *Thaddeus-X*, 175 F.3d at 399.

---

[5]Maben also alleges in his *pro se* complaint that Thelen said "if you're going to complain then you're going to get a misconduct for it." (R. 1, Complaint, PageID # 5.) Immediately after making that threat to punish Maben for pursuing the grievance, Maben alleges that Thelen followed through and issued the misconduct ticket. Although this did not make it into Maben's affidavit, if true, it would certainly support Maben's claim that Thelen issued the misconduct ticket because of the complaint, and not because Maben created a disturbance.

In all, then, Maben has introduced sufficient evidence to withstand summary judgment on his First Amendment retaliation claim. We therefore decline to affirm the district court's decision based on this alternate ground.

## IV.    Qualified Immunity

### Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Gillis*, 845 F.3d at 683. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Analysis

Thelen argues that this Court should affirm the district court's grant of summary judgment for Thelen on the grounds that Thelen is entitled to qualified immunity. He argues that "there is insufficient evidence that his actions violated clearly established law." (Thelen Br. at 15.) We think Maben has introduced sufficient evidence of a violation of a clearly established constitutional right.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, we ask: "First, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right? Second, is the right clearly established?" *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts may address these two prongs in whichever order they choose. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Chappell v. City Of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).

As to the first prong, as discussed above, Maben has introduced sufficient evidence that Thelen violated Maben's constitutional rights. Thelen tries to argue that he "acted because Maben was causing a disturbance, not in retaliation, and not because Maben was engaged in any protected activity." (Thelen Br. at 17.) But "we assume the truth of all record-supported allegations by the non-movant," *Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017) (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2017 (2014)), and "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

As to the second prong, this Court has repeatedly recognized that if a prison officer "retaliated against [a prisoner] for filing grievances," the "alleged conduct also comprises a violation of clearly established constitutional law." *Noble*, 87 F.3d at 162 (citations omitted); *King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005) ("Charging an inmate with misconduct is an adverse action because serious consequences can flow from erroneous charges."); *Scott*, 377 F.3d at 572 (finding it clearly established that "the false issuance of a misconduct charge is unconstitutional retaliation"); *Bell*, 308 F.3d at 612.

Thelen further argues that there was no violation of a clearly established right because our cases dealing with the false issuance of misconduct charges deal with the issuance of major misconduct charges and not minor misconduct charges. We think Thelen's preoccupation with MDOC's label of major and minor misconduct is misplaced. Instead of focusing on that classification, Thelen should focus on the action of retaliating by issuing a misconduct ticket and the penalties that come with being found guilty of misconduct. We have made clear that a prison officer may not undertake adverse actions in retaliation for a prisoner's exercise of his First Amendment rights. *Bell*, 308 F.3d at 612. We have also made clear that actions comparable in seriousness to the ones at issue in this case implicate a prisoner's First Amendment rights. *Id.*; s*ee supra* III.B. (discussing punishments at least as severe as the one imposed in this case). Moreover, the sanctions that may be imposed as a result of minor misconduct share features with the sanctions that may be imposed as a result of major misconduct. For example, a prisoner found guilty of minor misconduct may be confined to their cell for five days and lose any visitation rights or access to any prison facilities, including the library. This shares features with

administrative segregation, and we have held that being confined in administrative segregation for five days constituted a sufficiently adverse action. *Herron*, 203 F.3d at 416. Consequently, we think that a reasonable prison officer would have been aware that issuing a misconduct ticket, even a minor misconduct ticket, in retaliation for the inmate's exercise of his First Amendment rights could give rise to constitutional liability. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (citations omitted)); *Bell*, 308 F.3d at 612.

Consequently, we decline Thelen's invitation to affirm the district court's decision based on qualified immunity.

## V.        Eleventh Amendment Immunity

### Standard of Review

This Court reviews a district court's grant of summary judgment de novo. *Gillis*, 845 F.3d at 683. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Analysis

Thelen argues that as a state officer, the Eleventh Amendment bars Maben's suit against him in his official capacity.

The Eleventh Amendment "denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945) (citation omitted). "The [Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citation omitted). "This bar remains in effect when State officials are sued for damages in their official capacity." *Id.* (citations omitted). Section 1983 "was not intended to abrogate a State's Eleventh Amendment Immunity." *Id.* at n.17. (citations omitted). The Eleventh

Amendment, however, does not bar suits for damages against officers in their personal capacity under § 1983. *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991).

The Eleventh Amendment bars Maben's "official-capacity action for damages" against Thelen in federal court. *See Kentucky*, 473 U.S. at 170. However, the Eleventh Amendment does not bar Maben's § 1983 claim against Thelen for damages in his personal capacity. *See Hafer*, 502 U.S. at 27.

Accordingly, we affirm the district court's grant of summary judgment to Thelen on Maben's official-capacity claim based on the Eleventh Amendment.

## CONCLUSION

Based on the foregoing, we **AFFIRM in part** and **REVERSE in part** the judgment of the district court and **REMAND** the case to the district court for proceedings consistent with this opinion.