**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-7185

EMMANUEL KING SHAW,

Plaintiff - Appellant,

v.

T. S. FOREMAN, Unit Manager; M. MURPHY, Unit Manager; T. LEABOUGH, Hearings Officer; N. LEACH, Counselor; F. L. ADAMS, Lieutenant,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:18-cv-01286-CMH-IDD)

Argued: October 27, 2022                    Decided: February 3, 2023

Before GREGORY, Chief Judge, WYNN, Circuit Judge, and FLOYD, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge Floyd wrote the opinion in which Chief Judge Gregory and Judge Wynn joined.

**ARGUED:** Daniel Steven Severson, KELLOGG HANSEN TODD FIGEL & FREDERICK PLLC, Washington, D.C., for Appellant. Lucas W.E. Croslow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Jason S. Miyares, Attorney General, Charles H. Slemp, III, Chief Deputy Attorney General, Andrew N. Ferguson, Solicitor General, Erika L. Maley, Principal Deputy Solicitor General, M. Jordan Minot, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

FLOYD, Senior Circuit Judge:

Plaintiff-Appellant Emmanuel King Shaw was an inmate at Sussex I State Prison (SISP) in 2017. A female correctional officer at SISP charged Shaw with a disciplinary offense, alleging that he directed lewd behavior toward her in the prison showers. Shaw denied the allegation, contending that security-camera footage would vindicate him. Subsequent to what Shaw alleged was a defective disciplinary-hearing process, prison officials found that he committed the offense and transferred him to a maximum-security facility. Based on the defects that Shaw perceived in the hearing process and subsequent transfer, he commenced a pro se civil action, levying a procedural due process claim and a First Amendment retaliation claim against Defendants-Appellees T.S. Foreman, M. Murphy, T. Leabough, N. Leach, and F.L. Adams (collectively, the "Prison Officials"). The district court dismissed Shaw's procedural due process claim, then granted summary judgment—pre-discovery—in favor of the Prison Officials on the remaining First Amendment retaliation claim. Shaw now appeals. For the reasons that follow, we reverse and remand.

I.

Shaw is presently serving a more than fifty-year sentence for abduction, robbery, burglary, and use of a firearm in commission of a felony. In 2017, he was housed in SISP. On July 19, 2017, a female correctional officer at SISP charged him with a disciplinary offense for allegedly masturbating in her direction while he showered. He denied the allegation, arguing that security-camera footage would prove his innocence. The prison

2

scheduled a disciplinary hearing for July 27, 2017 and moved Shaw to administrative segregation pending the hearing.

The disciplinary hearing was postponed, and Shaw, still in segregation, commenced a hunger strike to protest the delay. According to Shaw, SISP's internal policies mandated that he receive a hearing within fifteen days of his alleged violation. From August 2 to August 10, he filed multiple internal complaints and sent multiple letters to correctional officials regarding the delay. These included a letter sent on August 9 to the Offender Discipline Unit Manager at the Virginia Department of Corrections in Richmond, Virginia. According to Shaw, prison staff intercepted and opened some of these letters before returning them to him on the pretense of a faulty destination address.

A hearing officer eventually conducted Shaw's disciplinary hearing on August 17, 2017. According to Shaw, the officer refused to review exculpatory security-camera footage and proceeded to find that Shaw committed the charged offense—largely basing that finding on testimony from the charging officer. Given Shaw's history of disciplinary charges relating to "lewd or obscene acts against staff, particularly female staff," he qualified for transfer to a higher-security facility. J.A. 188. SISP transferred Shaw to Red Onion State Prison, a maximum-security prison, on September 18, 2017.

Proceeding pro se, Shaw sued the Prison Officials on October 11, 2018, alleging a violation of his procedural due process rights based on their failure to provide him with a timely disciplinary hearing—and his relegation to disciplinary segregation throughout the delay. He also alleged First Amendment retaliation, arguing (1) that he engaged in protected activity by filing internal complaints and by sending various letters, including his

3

August 9 letter addressed to the Offender Discipline Unit Manager at the Virginia Department of Corrections in Richmond, (2) that the Prison Officials were aware of his protected activity because they received his complaints and intercepted his mail, and (3) that they retaliated against him by denying him a fair disciplinary hearing and by transferring him to Red Onion.

The district court dismissed Shaw's procedural due process claim pursuant to 28 U.S.C. § 1915A, reasoning that his theory of a liberty-interest violation relied wholly on his extended relegation to administrative segregation pending his disciplinary hearing. The court concluded that "presence in segregation alone does not constitute atypical and significant hardship" such that it gives rise to a sufficient liberty interest. J.A. 90. The court subsequently noted that "[i]t is normal practice in pro se prisoner civil actions for defendants to file dispositive motions, if warranted and appropriate, before the start of discovery." J.A. 91 (emphasis omitted). Shortly thereafter, and before any discovery commenced, the Prison Officials moved for summary judgment on the remaining retaliation claim. The district court granted their motion, ruling that Shaw provided insufficient evidence of a causal connection between his protected activity and his extended stay in administrative segregation, particularly because he engaged in protected activity only after he had already been in segregation longer than appropriate under SISP policy. The court also explained that, setting aside the sequential misalignment between his protected activity and his placement in segregation, Shaw otherwise failed to provide adequate direct or circumstantial evidence of a causal link between his protected activity and the Prison Officials' adverse action.

Shaw now seeks reversal of both the dismissal of his procedural due process claim and the grant of summary judgment in the Prison Officials' favor on his retaliation claim. Regarding the dismissal, he argues that the district court erred in finding that he failed to plead a liberty interest beyond his interest in avoiding administrative segregation. He further contends that he plausibly alleged inadequate due process based on the Prison Officials' refusal to review exculpatory video evidence during his disciplinary hearing, and that this compromised process violated his liberty interest in avoiding transfer to a maximum-security facility. Regarding summary judgment, he argues that the district court erred in requiring him to prove "but-for" causation given this Court's adoption of a "same-decision" burden-shifting test in *Martin v. Duffy* (*Martin II*), 977 F.3d 294 (4th Cir. 2020). He also contends that he presented sufficient evidence of a causal link between his protected activity and the Prison Officials' retaliatory conduct, and that the district court erred by granting summary judgment without affording him any opportunity to conduct discovery.

Regarding the dismissed due process claim, the Prison Officials respond that (1) Shaw's theory of the claim on appeal differs from what he pled before the district court, and is therefore waived, and (2) qualified immunity bars his new theory of the claim. Regarding the retaliation claim, the Prison Officials respond that (1) Shaw failed to offer any evidence of a causal link between his protected activity and their alleged retaliation, and (2) the district court did not abuse its discretion by not ordering discovery because Shaw did not request it.

5

II.

A.

This Court reviews de novo a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915A. *See Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (citing *Slade v. Hampton Rds. Reg'l Jail*, 407 F.3d 243, 248 (4th Cir. 2005)). A district court should not dismiss a plaintiff's claim unless, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Martin v. Duffy* (*Martin I*), 858 F.3d 239, 248 (4th Cir. 2017) (simplified). This Court reads pro se pleadings "liberally and interpret[s] them 'to raise the strongest arguments that they suggest.'" *Martin II*, 977 F.3d at 298 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Moreover, when an action implicates a civil rights interest, "'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Slade*, 407 F.3d at 248 (simplified).

B.

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process [claim], a plaintiff must [first] identify a protected liberty or property interest and [then] demonstrate deprivation of that

6

interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). In the carceral context, "a prisoner claiming a violation of his right to procedural due process must show: (1) that there is a state statute, regulation, or policy that creates such a liberty interest, and (2) that the denial of such an interest imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Martin I*, 858 F.3d at 253 (simplified).

Here, Shaw plausibly alleged a violation of his procedural due process rights. He seems to concede on appeal that his temporary assignment to administrative segregation does not give rise to an actionable liberty interest. But avoiding transfer to a maximum-security prison suffices. As recognized by the Supreme Court, maximum-security facilities like Red Onion have "highly restrictive conditions, designed to segregate the most dangerous prisoners from the general prison population." *Wilkinson v. Austin*, 545 U.S. 209, 213 (2005). Accordingly, incarceration in a maximum-security "environment [is] so atypical and significant that it would give rise to a liberty interest 'under any plausible baseline.'" *Incumaa v. Stirling*, 791 F.3d 517, 530 (4th Cir. 2015) (quoting *Wilkinson*, 545 U.S. at 223).

The Prison Officials argue that when Shaw presented his theory of a procedural due process violation to the district court, it revolved exclusively around his placement in administrative segregation, and not around his transfer in the wake of a defective hearing, so his theory of liability on appeal was waived. It is true that, in the pled claim itself, Shaw seemed to emphasize administrative segregation as his purported liberty interest, and a delayed hearing as the procedural defect. But the factual allegations in his complaint

7

sufficiently presented the alternative liberty interest—invoking his fear of transfer—as well as the procedural defect that he perceived to stem from the Prison Officials' refusal to review video evidence during his pre-transfer disciplinary hearing. *See* J.A. 64 (Shaw pleading that he requested review of video evidence); J.A. 67 (Shaw pleading a Prison Official's refusal to review video evidence); J.A. 75 (Shaw pleading a defective hearing and a conspiracy to unjustifiably place him at a higher-security prison). This Court reads pro se pleadings to raise the strongest arguments that they suggest, and we consider whether a pro se civil rights plaintiff is entitled to relief under any legal theory that his factual allegations might plausibly convey. *See Martin II*, 977 F.3d at 298; *Slade*, 407 F.3d at 248. Thus, Shaw plausibly alleged a colorable violation of his procedural due process rights.

We acknowledge that the leniency with which we treat pro se litigants' pleadings in the civil rights context may marginally increase burdens on defendants—necessarily requiring their thoughtful consideration of all factual allegations, and not just expressly pled claims. But context demands this searching treatment, for its absence risks exposing indigent, incarcerated persons to injustices that we cannot condone.

Notably, the Prison Officials argue that qualified immunity bars Shaw's procedural due process claim. The district court did not reach this question, and we decline to usurp that court's function as the body of first review. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) ("Absent exceptional circumstances, . . . we do not consider issues raised for the first time on appeal.") (quoting *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004)). Thus, we do not now decide

whether the procedural right to potentially exculpatory video evidence was clearly established at the time of Shaw's disciplinary hearing.

III.

A.

This Court reviews a district court's pre-discovery grant of summary judgment for abuse of discretion. *Pledger v. Lynch*, 5 F.4th 511, 524 (4th Cir. 2021) (citing *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002)). Generally, summary judgment must be "refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods*, 302 F.3d at 244 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). But a nonmoving party "cannot complain that summary judgment was granted without discovery unless that party . . . attempt[ed] to oppose the motion on the grounds that more time was needed for discovery."[1] *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).

A nonmovant presents such opposition in the form of a Rule 56(d) affidavit, stating that he "cannot present facts essential to [his] opposition." Fed. R. Civ. P. 56(d). Although this Court places great weight on the requirement of a Rule 56(d) affidavit, *see Harrods*, 302 F.3d at 244, even in the affidavit's absence, a district court abuses its discretion by

---

[1] This is particularly so when a nonmovant properly received a *Roseboro* notice—a necessity where a pro se nonmovant is concerned—explaining the requirements of the summary judgment standard and the nonmovant's rights or responsibilities with respect to the pending motion. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).

9

granting summary judgment when it otherwise has "fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record." *Pledger*, 5 F.4th at 526 (citing *Harrods*, 302 F.3d at 244–45). Such premature summary judgment is particularly disfavored in the context of pro se litigation, and when "facts bearing on the subjective knowledge" of defendants "are exclusively in the control of the opposing party." *Id.* (simplified).

If we determine that a district court did not abuse its discretion in considering summary judgment pre-discovery, we proceed to review the district court's grant of summary judgment de novo, applying the same standards as the district court. *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015) (citing *Providence Square Assocs., LLC v. G.D.F., Inc.*, 211 F.3d 846, 850 (4th Cir. 2000)). Under the federal rules, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). "An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant." *Id.* (citation omitted). The Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010)).

The moving party bears the "initial responsibility" of showing that there is no

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that threshold burden, the nonmoving party must then go beyond the pleadings and affidavits and show that there are "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (simplified). Under this standard, "[t]he mere existence of a scintilla of evidence" is insufficient to withstand an adequately supported summary judgment motion. *Anderson*, 477 U.S. at 252. Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom*, 980 F.3d at 1037 (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)).

### B.

The district court abused its discretion by granting summary judgment pre-discovery. Shaw properly received a *Roseboro* notice, explaining his rights to file competing affidavits and other evidence in response to the Prison Officials' pre-discovery summary judgment motion. Shaw failed to respond with such evidentiary filings—or with a Rule 56(d) affidavit. But the district court was on fair notice of potential disputes as to the sufficiency of the summary judgment record. *See Pledger*, 5 F.4th at 526. Much of the evidence that Shaw needs in this matter to combat a motion for summary judgment either bears on the Prison Officials' subjective knowledge or is in their exclusive control. In such situations, premature summary judgment is particularly disfavored. *See id.* Furthermore, Shaw expressed a desire to investigate the Prison Officials' evidence, impliedly seeking discovery. *See, e.g.*, J.A. 206 ("[A]fter investigating the defendants'

11

evidence, this court will find that the defendants were aware that they were subjecting me to an invalid disciplinary hearing . . . .").

Finally, and perhaps most importantly, it defies logic and common sense that summary judgment was appropriate when the video evidence—core to Shaw's theory of vindication for the underlying disciplinary offense—had yet to surface. This evidence was in the Prison Officials' exclusive control. Moreover, it would likely bear profound consequences on the claims in this dispute, depending on its depictions. The record is replete with Shaw's requests that prison officials produce and review the video evidence. The fact of the Prison officials' failure to disclose the video is deeply concerning, and independently bespeaks the insufficiency of the summary judgment record. On this basis alone, the district court abused its discretion.

But even if the district court did not abuse its discretion by prematurely granting summary judgment, it erred in its merits analysis. The district court found—and the Prison Officials do not dispute on appeal—that Shaw engaged in protected activity when filing various complaints and sending various letters in August 2017. The district court likewise found—and the Prison Officials do not dispute—that the Prison Officials took adverse action against Shaw. But the district court granted summary judgment in the Prison Officials' favor because "the undisputed factual record demonstrates that there was no causal connection between [Shaw's] alleged First Amendment activity and [the Prison Officials'] alleged retaliatory conduct." *Shaw v. Foreman*, 1:18cv1286 (CMH/IDD), 2020 WL 4018933, at *1 (E.D. Va. July 16, 2020).

The court first explained that no causal connection could exist between Shaw's

protected activity and the delayed disciplinary hearing because the delays began before Shaw even engaged in protected activity.  It further reasoned that mere temporal proximity between his protected activity and the allegedly defective disciplinary hearing is "simply too slender a reed on which to rest a Section 1983 retaliation claim."  *Id.* at \*6 (quoting *Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993)).  Although Shaw contended that the Prison Officials were opening outgoing mail, thus proving their knowledge of his protected activity and supporting a finding of causation, the district court concluded that Shaw substantiated this theory with little to no evidence.  The district court further concluded that, even if Shaw presented evidence that the Prison Officials were opening his mail—and thus that they came to know the contents of his letters—he still offered no evidence that such knowledge caused his allegedly unfair hearing.

"The First Amendment protects the right to petition the Government for a redress of grievances, and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated."  *Martin I*, 858 F.3d at 249 (simplified).  To state a colorable First Amendment retaliation claim, "a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant[s] took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant[s'] conduct."  *Id.* (simplified).

To demonstrate a causal relationship between protected activity and the defendants' conduct, this Court applies the burden-shifting framework of the same-decision test.  *Martin II*, 977 F.3d at 299.  That test allocates a prima facie burden to the plaintiff to show that his protected activity was "a substantial or motivating factor" in the defendants' action.

13

*Id.* at 301. The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same action in the absence of the plaintiff's protected activity. *Id.* at 299–300. For a plaintiff to meet his prima facie burden of causation, he must show "(1) that the defendant[s were] aware of [his] engaging in protected activity" and (2) "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005) (simplified).

Here, with respect to knowledge, Shaw's evidence is concededly convoluted and slightly tenuous. Nevertheless, when drawing all reasonable inferences in his favor, the record suggests that the Prison Officials knew of his protected activity. In a letter dated August 15, 2017, Shaw wrote that "staff here at Sussex I [are] opening all the mail that simply has 'Offender Discipline Unit'" listed as the address, thus implying that the Prison Officials were aware of Shaw's attempts to grieve to Richmond officials. J.A. 84. Furthermore, at least one of the Prison Officials received one of Shaw's informal-complaint filings asking them to review the video footage pre-hearing. *See* J.A. 81 (informal complaint received by Murphy on August 7). Finally, after Shaw's allegedly defective hearing, but before the Prison Officials transferred him to Red Onion, Shaw filed an informal complaint—seen by at least one of the Prison Officials—explaining that he had "written Richmond already," referring to his August 9 letter. J.A. 30. Thus, a genuine dispute of fact exists as to whether one or more of the Prison Officials knew of his protected conduct pre-hearing or before his transfer.

Regarding temporal proximity, the district court was correct that a causal link

14

between Shaw's protected activity and allegedly retaliatory hearing delays would be nigh impossible to prove, given that hearing delays had already begun before Shaw engaged in protected activity. However, Shaw also pled that the defective hearing itself amounted to adverse action, as did his subsequent transfer to Red Onion. The hearing and transfer occurred after his protected activities, even if delays began prior. Furthermore, the hearing and transfer occurred in extremely close temporal proximity to his protected activity. *See Gregg-El v. Doe*, 746 F. App'x 274, 275 (4th Cir. 2019) (per curiam) ("[T]emporal proximity . . . may support an inference of causation." (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015)). Shaw's protected activity spanned at least from August 2 to August 10, his hearing took place on August 17, and the Prison Officials made their transfer decision around August 23.

Finally, we note that the Prison Officials' failure to provide the disputed video evidence is profoundly powerful circumstantial evidence that perhaps they did retaliate. Under *Martin*'s burden-shifting framework, the simplest way that the Prison Officials can prove that they would have taken the same adverse actions in the absence of Shaw's protected activity would be to provide video evidence that Shaw did, indeed, subject the female correctional officer to the lewd behavior that underpinned the disciplinary-hearing verdict and the transfer decision. The Prison Officials' failure to fortify themselves with such a simple and formidable defense to Shaw's allegations is highly suspect. A reasonable jury could certainly perceive the Prison Officials' reticence in producing the video as evincing a retaliatory motive.

Consequently, viewing the evidence and reasonable inferences in a light most

15

favorable to Shaw, a reasonable jury could conclude that the Prison Officials retaliated. Notably, the merits defects perceived by the district court could have resolved with more certainty—one way or another—by permitting discovery. Following this Court's remand, Shaw's First Amendment retaliation claim should be considered anew by the district court post-discovery if either party newly moves for summary judgment. Although we perceive the above defects in the district court's initial decision, discovery may fundamentally alter the meritoriousness of the parties' respective positions. Thus, we do not foreclose de novo consideration of this claim at summary judgment by the court below.

## IV.

Shaw plausibly alleged a violation of his procedural due process rights such that dismissal at the pleading stage was inappropriate. Pre-discovery summary judgment on his First Amendment retaliation claim was likewise inappropriate. Thus, we reverse and remand for proceedings consistent with this opinion—including, but not limited to, discovery on both claims.

When "further factual development would be appropriate" on remand, this Court has previously recommended that a district court "consider appointing counsel to assist in litigating the case, . . . consistent with local rules and procedures." *Pledger*, 5 F.4th at 527 n.6 (citing *Brooks v. Johnson*, 924 F.3d 104, 122 n.9 (4th Cir. 2019)). Here, both of Shaw's claims will require further factual development on remand so that they may be properly considered at the summary judgment stage and, if necessary, proceed to trial. Thus, we recommend that the district court appoint counsel to Shaw.

16

*REVERSED AND REMANDED*

17