NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0181n.06

Case No. 20-1619

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 12, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FRAZIER CUNNINGHAM, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| STATE OF MICHIGAN DEPARTMENT OF | ) | MICHIGAN |
| STATE POLICE; TROOPER BENJAMIN | ) | |
| SONSTROM, | ) | |
| | ) | |
| Defendants-Appellees, | ) | |
| | ) | |
| TROOPER LISA LUCIO, | ) | |
| Defendant. | ) | |

BEFORE: SILER, THAPAR, and MURPHY, Circuit Judges.

THAPAR, Circuit Judge. Sometimes when police officers make a traffic stop, they get more than they bargained for. And that was definitely true here. Michigan State Trooper Benjamin Sonstrom pulled over Frazier Cunningham for excessively tinted windows. But this routine stop turned sideways when Sonstrom discovered a handgun in Cunningham's car. Armed with a Taser, Sonstrom forced Cunningham to the ground and arrested him. Cunningham claims that Sonstrom's use of force was excessive and violated the Fourth Amendment. The district court granted Sonstrom's motion for summary judgment. We affirm.

I.

Sonstrom was patrolling near Romulus, Michigan, when he noticed a car with darkly tinted windows. Some window tints are illegal in Michigan, so Sonstrom pulled the car over. The driver was Frazier Cunningham, a 450-pound adult man.

Sonstrom ran Cunningham's information and discovered that Cunningham had a long criminal history. Cunningham's convictions ranged from armed robbery to assault on a police officer, as well as various firearm charges. But when questioned, Cunningham claimed he had no "major" convictions. That rang alarm bells for Sonstrom—he believed that Cunningham's answers were deceptive, and that Cunningham appeared nervous. So he asked Cunningham to step out of the car. He then had a K-9 sniff the car's exterior. When the K-9 alerted, Sonstrom searched the car's interior. Inside he found a loaded 9mm handgun.

Sonstrom's dashboard camera captured what happened next. Sonstrom asked Cunningham to approach the car and drew his Taser. With the Taser trained on Cunningham, Sonstrom ordered Cunningham to turn around and get on his knees. Cunningham complied. Cunningham had been on a phone call, so Sonstrom ordered him to drop the phone. When Cunningham did not immediately comply, Sonstrom pushed him to the ground. Sonstrom then handcuffed Cunningham and loaded him into his squad car.

Cunningham sued. He claimed that Sonstrom used excessive force during the arrest in violation of the Fourth Amendment. Specifically, Cunningham alleged that Sonstrom pointed a Taser at him, hit him in the neck with the Taser, and pushed him to the ground. The district court granted summary judgment for Sonstrom, holding that his use of force was reasonable under the circumstances. Cunningham now appeals.

II.

Law enforcement officers are entitled to qualified immunity unless two conditions are met: (1) the officer's conduct violated a constitutional right, and (2) the right that the officer violated was clearly established at the time of the conduct. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). To prevail, Cunningham must show that both conditions are satisfied. *See Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018).

The constitutional right at issue here is the right against unreasonable seizures in the Fourth Amendment. Courts have "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). But not all force is permissible: Officers may only use force that is objectively reasonable under the circumstances. *Id.* at 396–97.

Cunningham claims that two of Sonstrom's actions were objectively unreasonable. He alleges that Sonstrom: (1) hit him in the neck with a Taser, and (2) pointed a Taser at him and pushed him to the ground. We consider each allegation in turn.

*Taser Strike.* Cunningham's first allegation is that Sonstrom hit him in the neck with a Taser. He felt like he was hit twice, and he believed it was the Taser because "[i]t was hard." R. 26-2, Pg. ID 298–99 (Cunningham Deposition). We usually accept such an allegation as true when reviewing a motion for summary judgment. *Scott*, 550 U.S. at 378. But here the dashboard camera captured the entire arrest. And when a video of the arrest exists, we "view[] the facts in the light depicted by the videotape." *Id.* at 381.

The dashboard camera footage does not support Cunningham's claim that Sonstrom hit him with a Taser. As discussed above, the footage shows Sonstrom tell Cunningham to approach him. While Cunningham approaches, Sonstrom unholsters the Taser with his right hand and points

it at Cunningham. He then tells Cunningham to turn around and get on his knees. After that, he tells Cunningham to put his phone on the ground. When Cunningham does not immediately comply with that command, Sonstrom uses his left hand to push Cunningham down. At no point does the footage show Sonstrom strike Cunningham with the Taser.

To be sure, Sonstrom had his back to the dashboard camera during the arrest. So Sonstrom's right hand is obstructed from view. But the dashboard camera captures Sonstrom's left hand and arm, most of his right arm, and his shoulders. Any significant movement by Sonstrom's right hand (which held the Taser) would be reflected, at minimum, in his right arm and shoulder. The dashboard camera footage shows no movement consistent with Sonstrom's striking Cunningham with the Taser.

Given the video, no reasonable jury would find that Sonstrom hit Cunningham with the Taser. So there is no genuine dispute of material fact. *See Pennington v. Terry*, 644 F. App'x 533, 539–40 (6th Cir. 2016) (video showed officer did not deploy Taser, so summary judgment was appropriate).

*Push to the Ground.* Cunningham's second allegation is that Sonstrom pushed him to the ground and pointed a Taser at him. So the question is whether Sonstrom's use of force was reasonable under the circumstances. *Ashford v. Raby*, 951 F.3d 798, 801–03 (6th Cir. 2020). It was.

To see why, consider the arrest in context. One of the most dangerous moments for a police officer is just before a suspect is handcuffed. Usually, the officer and suspect are in close quarters. The suspect is unrestrained and the officer has just told the suspect that he is under arrest—which sometimes prompts the suspect to attack the arresting officer or try to escape.

In Cunningham's case, Sonstrom knew the stakes were higher than usual. Cunningham has a history of violent crime, including assaulting police officers. He also has a history of illegal firearm possession. And Sonstrom had just found a handgun in Cunningham's car. What's more, at 450 pounds Cunningham would be difficult to restrain. Given these circumstances, it was reasonable for Sonstrom to take additional precautions by pointing his Taser at Cunningham. *See Graham*, 490 U.S. at 396–97. And it was reasonable for Sonstrom to ensure Cunningham was quickly handcuffed by pushing him to the ground when he did not immediately comply with Sonstrom's orders. *See Ashford*, 951 F.3d at 801–03. Under the circumstances, the pointing of the Taser and push to the ground were reasonable.

## III.

Because Sonstrom's actions were objectively reasonable, he did not violate the Fourth Amendment. Sonstrom is thus entitled to qualified immunity. We affirm.